IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SWN PRODUCTION COMPANY, LLC,

    Plaintiff,

v.                                  Civil Action No. 5:15CV108
                                               (STAMP)
WILLIAM FRANCIS EDGE, JR.,
and BARBARA ANN EDGE,
husband and wife and
DAVID WAYNE EDGE, single,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I.  <u>Procedural History</u>

This civil action concerns the plaintiff's alleged rights, as a lessee, to undertake oil and gas operations on the defendants' property. In its complaint, the plaintiff claims that it acquired the express right to explore, drill, and develop the area for oil and gas operations. Despite that alleged right, the plaintiff asserts that the defendants have denied it entry to conduct such operations. Therefore, the plaintiff seeks both injunctive relief and a declaratory judgment concerning its rights under the lease.

After filing its complaint, the plaintiff filed a motion for a preliminary injunction. ECF No. 3. In that motion, the plaintiff seeks to enjoin the defendants from denying the plaintiff entry on the property. The defendants filed a response in opposition, wherein they contend that the plaintiff cannot satisfy the requirements for granting a preliminary injunction. ECF No.

11. The plaintiff then filed a reply in support of its motion. ECF No. 18. On September 28, 2015, this Court conducted a hearing regarding the plaintiff's motion. At that hearing, the parties provided testimony, submitted exhibits, and offered additional evidence in support of their arguments.

For the reasons set forth below, the plaintiff's motion for a preliminary injunction is granted.

## II. Facts[1]

The plaintiff is a Texas limited liability company, which is solely owned by a Delaware corporation with its principal place of business in Texas. The defendants are residents of West Virginia. In 1980, the defendants acquired from Harold H. Fisher and Dorothy L. Fisher (collectively, "the Fishers") approximately 87.85 acres of land at issue in this civil action. The defendants' deed ("1980 deed"), however, states the following about the oil and gas rights:

> There is excepted and reserved from this conveyance, however, all of the oil and gas, in and underlying said land, together with all of the rights to enter upon said land to explore, drill for, produce and market all such oil and gas as said rights are set forth in the lease from Harold H. Fisher and Dorothy L. Fisher, his wife, to Columbia Gas Transmission Corporation, by lease dated May 3, 1977, and recorded in the office of the Clerk of the County Court of Marshall County, West Virginia, in Deed Book 460, page 351.

---

[1]For purposes of deciding this motion for a preliminary injunction, this Court, for the most part, adopts the facts as set forth in the plaintiff's complaint and as developed by testimony at the hearing on the motion for a preliminary injunction.

ECF No. 1 Ex. A.  Therefore, the Fishers reserved the oil and gas rights for the Fishers and future lessees in the 1980 deed between the Fishers and the defendants.  In addition, those oil and gas rights were, as quoted above, the same as those set forth in a previous lease between the Fishers and Columbia Gas Transmission Corporation ("1977 lease").  The 1977 lease states the following as is relevant to the 1980 deed:

> The Lessor [Harold H. Fisher and Dorothy L. Fisher] further grants Lessee [Columbia Gas Transmission Corporation] during the term of this lease the exclusive right to enter upon the above described land to drill, maintain and operate new wells and to recondition, reopen, operate and maintain all existing and abandoned wells located thereon for the production of oil and gas and for the storage of gas by injecting, storing, and withdrawing the same by pumping or otherwise through such wells or other wells located on adjoining or neighboring lands in the same vicinity; the rights of way and servitudes on, over, and through such tract for pipelines, drips, tanks, meters and regulators, together with the structures to house the same; the right to use oil, gas and water from said land free of cost to the Lessee for all such purposes; the right of ingress and egress over such tract for exercising any of the aforesaid rights, and all other rights and privileges necessary, incident to, or convenient for the operation of the above described tract, alone and conjointly with other lands for the production and transportation of oil and gas, and for the injection, storage and withdrawal of gas, with the right of removing either during or after the term hereof all machinery, pipelines and other equipment placed on said land by the Lessee, including the right to draw and remove casing.  The Lessee will pay Lessor for any damages caused to growing crops, trees, and fences on the demised premises caused by the Lessee's operations hereunder.

Id. at Ex. B.  That 1977 lease had a five-year term.  In sum, the Fishers previously leased to Columbia Gas Transmission Corporation

3

the oil and gas rights of the property by the 1977 lease. When the Fishers conveyed the property to the defendants by the 1980 deed, the Fishers did so subject to reserving their interest in the oil and gas rights of the property.

Following the 1977 lease and 1980 deed, the Fishers granted an oil and gas lease to NPAR, LLC in 2010 ("2010 lease"). The 2010 lease granted to NPAR, LLC the exclusive right to explore, drill, develop, and conduct oil and gas operations, "plus all other rights and privileges that are necessary or land covered hereby." Id. at Ex. C. That 2010 lease applied to land that also included the defendants' property. The plaintiff then obtained the leasehold rights granted to NPAR, LLC, and the 2010 lease was renewed in 2015.

After the plaintiff obtained the leasehold rights, it received approval to operate an oil and gas well on the property by the West Virginia Department of Environmental Protection. Id. at Ex. F. The plaintiff alleges that it has spent over $750,000.00 preparing to operate the approved oil and gas well. The well was scheduled to be in operation by October 2015. However, the defendants denied the plaintiff's personnel entry to the property on July 27, 2015, and continue to do so. The defendants dispute the plaintiff's right of entry onto their property to conduct its oil and gas operations. In particular, they believe that the plaintiff cannot use the surface of their property to engage in horizontal drilling

4

into neighboring lands so as to extract and produce the oil and gas from those neighboring lands.

III. Applicable Law

The United States Court of Appeals for the Fourth Circuit has recognized that "preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1992)) (internal quotations omitted).

Until 2008, the Fourth Circuit followed the four-factor Blackwelder test in determining whether a preliminary injunction should be granted. See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977). Those factors were: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest." Id. at 193. In light of the Supreme Court's ruling in Winter v. Natural Resources Defense Council, Inc., 55 U.S. 7 (2008), however, the Fourth Circuit has abandoned this Blackwelder test in favor of the stricter approach in Winter.

In The Real Truth About Obama, Inc., the Fourth Circuit set forth the equitable factors that a district court must consider

5

when determining whether a temporary restraining order or preliminary injunction should issue based on the Supreme Court's ruling in Winter. The four factors that the plaintiff must establish to obtain a preliminary injunction under this test are:

> (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

Id. at 346 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)). As to the first two factors, Winter requires that the plaintiff clearly demonstrate that he will likely succeed on the merits and that he will likely be irreparably harmed absent preliminary relief. See The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346-47 (4th Cir. 2009) (emphasis added).

The issuance of a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974). If a preliminary injunction is granted, the order granting the same must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or any other document -- the act or acts restrained or required." See Fed. R. Civ. P. 65(d).

IV. Discussion

In its motion, the plaintiff believes that it satisfies the requirements for issuing a preliminary injunction. In particular, the plaintiff contends that it has made a clear showing of its success on the merits. The plaintiff points to the 1977 and 2010 leases and the 1980 deed, which preserved its right as a lessee to the oil and gas rights. Further, the plaintiff claims that it has incurred over $750,000.00 in expenses to prepare the oil well, and will face additional expenses due to delays if relief is not granted. As to the equities involved, the plaintiff asserts that West Virginia law addresses the defendants' concerns about property damage. Finally, the public policy of West Virginia favors the responsible development of oil and gas resources. For those reasons, the plaintiff requests a preliminary injunction, whereby the defendants would be enjoined from denying the plaintiff entry onto the property to conduct its oil and gas operations.

The defendants seek to refute the plaintiff's arguments. The defendants do not dispute that the "owner of the mineral tract underlying their property has the right to the reasonable use of the surface to extract the minerals underlying their property." ECF No. 11. However, the defendants assert that the plaintiff does not have the right to use the surface of their land to extract any oil and gas from outside of the defendants' property. The defendants also contend that the plaintiff's proposed use of the

7

property substantially burdens their use. Moreover, the defendants believe that the 1977 lease expired, thus eliminating the plaintiff's express rights to oil and gas production. Because the plaintiff, according to the defendants, has only an implied right, the defendants argue that the plaintiff is limited to only the reasonable use of their property. According to the defendants, the plaintiff's proposed use is an unreasonable one. Furthermore, the defendants argue that the plaintiff cannot satisfy the requirements for granting a preliminary injunction. Because the plaintiff has no right to enter or engage in oil and gas operations so as to extract oil and gas located outside of their property, and because it is not entitled to a preliminary injunction, the defendants argue that the plaintiff's motion must be denied.

For the reasons set forth below, the plaintiff's motion for a preliminary injunction is GRANTED. The requirements for determining whether to grant a preliminary injunction, and the application of the facts to those requirements, are discussed below in the order presented.

A.  <u>Plaintiff Is Likely to Succeed on the Merits</u>

The issue here is whether the 1977 and 2010 leases and the 1980 deed provide the plaintiff with the express rights to use the land as proposed. If the plaintiff can demonstrate by a "clear showing" that it maintains those rights, then the first requirement in determining whether to grant a preliminary injunction is

8

satisfied in this case. See Real Truth About Obama, Inc., 575 F.3d at 345 ("the party seeking the preliminary injunction must demonstrate by a 'clear showing' that, among other things, it is likely to succeed on the merits at trial." (internal citations omitted)).

Under West Virginia law, an oil and gas lease is both a conveyance and a contract. Bryan v. Big Two Mile Gas Co., 577 S.E.2d 258, 265 (W. Va. 2001); Jolynne Corp. v. Michels, 446 S.E.2d 494, 499-500 (W. Va. 1994). Because of the contractual nature of oil and gas leases, principles of contract law generally govern their interpretation. See id.; Iafolla v. Douglas Pocahontas Coal Corp., 250 S.E.2d 128 (W. Va. 1978) (applying contract principles to an oil and gas lease). Therefore, "[w]hen the language of a written instrument is plain and free from ambiguity, a court must give effect to the intent of the parties as expressed in the language employed and in such circumstances resort may not be had to rules of construction." Cotiga Development Co. v. United Fuel Gas Co., 128 S.E.2d 626, 631 (W. Va. 1962) (citing Syl. Pt. 1, Magnus v. Halltown Paper Board Co., 100 S.E.2d 201 (W. Va. 1957)). Phrased another way, if "the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, Bethlehem Mines Corp. v. Haden, 172 S.E.2d 126 (W. Va. 1969). Moreover, "'[a]greements are not necessarily ambiguous because the parties disagree as to the meaning of the language of the

9

agreement.'" Orteza v. Monongalia County Gen. Hosp., 318 S.E.2d 40, 43 (W. Va. 1984) (quoting Richardson v. Econo-Travel Motor Hotel Corp., 553 F. Supp. 320 (E.D. Va. 1982)).

As mentioned earlier, the parties disagree about the applicability of the 1977 lease. The 1980 deed, which is between the Fishers and the defendants, states in relevant part the following:

> There is excepted and reserved from this conveyance, however, all of the oil and gas, in and underlying said land, together with all of the rights to enter upon said land to explore, drill for, produce and market **all such oil and gas as said rights are set forth in the lease from Harold H. Fisher and Dorothy L. Fisher, his wife, to Columbia Gas Transmission Corporation, by lease dated May 3, 1977**, and recorded in the office of the Clerk of the County Court of Marshall County, West Virginia, in Deed Book 460, page 351.

ECF No. 11 Ex. 1 (emphasis added). That 1980 deed refers to the previous 1977 lease, which granted rights to access and produce oil and gas to Columbia Gas Transmission Corporation. The 1977 lease had a five-year term. The defendants appear to argue that the 1980 deed incorporated by reference the 1977 lease. If so, then the defendants argue that the 1977 lease expired, and with it, any reservation or leased right to the oil and gas rights. The plaintiff, however, contends that the 1980 deed did not incorporate by reference the terms of the 1977 lease. Rather, the plaintiff argues that the at issue language in the 1980 deed was a reservation by the Fishers and any future lessee of the oil and gas rights to the property. More specifically, the plaintiff believes

10

that the 1977 lease was referenced in the 1980 deed so as to illustrate the scope of the oil and gas rights that the Fishers reserved.

Under West Virginia law, "parties may incorporate into their contract the terms of some other writing." <u>State ex rel. U-Haul Co. of W. Va. v. Zakaib</u>, 752 S.E.2d 586, 596 (W. Va. 2013). However, "a mere reference in a writing to another document is not always sufficient to incorporate into the writing the referenced document." <u>Id.</u> The Supreme Court of Appeals of West Virginia has even stated that "[a]n oblique reference to a separate, non-contemporaneous document is insufficient to incorporate the document into the parties' final contract." <u>Id.</u>

Looking at the plain language of the 1980 deed, it is clear and unambiguous that 1980 deed does not incorporate by reference the terms of the 1977 lease. Rather, the 1980 deed's reference to the 1977 lease serves to illustrate the acceptable scope of use that a future lessee may possess if the oil and gas rights are conveyed by the Fishers, or any subsequent lessor. The first statement of the disputed provision explicitly states that "**There is excepted and reserved from this conveyance** [between the Fishers and defendants] **. . . all of the oil and gas . . . together with all of the rights to enter upon said land** to explore, drill for, produce and market all such oil and **as said rights are set forth** in the [1977 lease]." ECF No. 11 Ex. 1 (emphasis added). Rather than

11

explicitly stating the scope of that reservation by the grantor and any future lessee, it essentially cites the 1977 lease to illustrate such scope. Analyzing that provision and the entire 1980 deed, it is clear and unambiguous that the parties did not incorporate by reference the explicit terms of the 1977 lease, such that "the two [writings] form a single instrument." U-Haul Co. of W. Va., 752 S.E.2d at 595. Rather, the 1980 deed merely mentions the 1977 lease so as to illustrate the extent and scope of the reserved oil and gas rights by the Fishers. The 1980 deed is sufficiently clear and unambiguous in its meaning. Therefore, the plaintiff has made a clear showing that it has an express right to enter and use the property pursuant to its status as a lessee of the mineral rights. Stated another way, it has made a clear showing that it is likely to prevail on the merits, and, thus, the first requirement in determining whether to grant a preliminary injunction is satisfied in this case.

B. Plaintiff Is Likely to Suffer Irreparable Harm

The second requirement in determining whether to grant a preliminary injunction is that the plaintiff "make a clear showing that it is likely to be irreparably harmed absent preliminary relief." The Real Truth About Obama, 575 F.3d at 347. "Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th

12

Cir. 1994). If, however, "the record indicates that the plaintiff's loss is a matter of simple mathematic calculation, a plaintiff fails to establish irreparable injury for preliminary injunction purposes." Id. at 551-52. The harm or injury must be "'actual or imminent, not remote or speculative.'" 7-Eleven, Inc. v. Khan, 977 F. Supp. 2d 214, 235 (E.D.N.Y. 2013) (quoting Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002)). Regarding the "'adequacy of potential remedies, it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute.'" Khan, 977 F. Supp. 2d at 234 (quoting Brooklyn Heights Ass'n, Inc. v. National Park Service, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011)); see Carpenter Tech. Corp. v. City of Bridgeport, 180 F.3d 93, 97 (2d Cir. 1999). Moreover, West Virginia law explicitly provides that an "[i]njunction lies for one owning minerals in land to prevent the surface owner from unlawfully resisting and obstructing the legitimate use of the surface by the mineral owner in the development of the minerals." Squires v. Lafferty, 121 S.E. 90, 91 (W. Va. 1924).

Given the legal framework discussed above, the plaintiff has made a clear showing of irreparable harm. The "unauthorized interference with a real property interest constitutes irreparable

13

harm as a matter of law." Khan, 977 F. Supp. 2d at 234. Further, no adequate remedy exists so as to prevent the defendants from denying future entry. A monetary remedy does not rectify the harm currently incurred by the plaintiff, or the harm that may be incurred in the future by further denials of entry. Moreover, the irreparable harm is both imminent and actual. The plaintiff is scheduled to begin oil and gas operations on the property in October 2015. The defendants have denied the plaintiff's personnel entry onto the property since July 2015. The denial of entry threatens to delay the plaintiff's proposed oil and gas operations, which are scheduled to begin in the very near future. The delay in operations may also affect additional subleases related to the operation, which were discussed at the hearing on the plaintiff's motion. Therefore, the harm that the plaintiff faces is both actual and imminent. Thus, based on the facts and record, the plaintiff has made a clear showing of an irreparable harm.

C.  Balance of Equities Tips in Favor of the Plaintiff

When weighing the parties' respective injuries and balancing the equities to determine whether a preliminary injunction should be issued, the court should consider the following: (1) the relative importance of the rights asserted and the act sought to be enjoined; (2) the preservation of the status quo; and (3) the balancing of damage and convenience generally. See Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932).

14

After examining the facts and the record, the equities tip in favor of the plaintiff. Here, the plaintiff is asserting its rights under the lease in order to engage in oil and gas operations. The public policy of the State of West Virginia favors the responsible development of the state's natural gas resources in a manner similar to that proposed by the plaintiff. See W. Va. Code § 22-6A-2(a)(8) (2012). The defendants, both at the hearing and in their response, take issue with the use of the land by the plaintiff. They allege that the plaintiff's proposed operations would infringe upon their commercial and recreational use of the property, either actual or proposed. As the plaintiff points out, however, the defendants possess a legal remedy for any surface damage that the plaintiff may cause. That remedy is found under West Virginia Code § 22-7-1, which provides "constitutionally permissible protection and compensation to surface owners of lands on which oil and gas wells are drilled from the burden resulting from drilling operations." W. Va. Code § 22-7-1 (2012). Under that statute, a surface owner may receive compensation for damages to his or her property by an oil and gas developer. If a surface owner fails to be compensated, that surface owner may (1) "bring an action for compensation in the circuit court of the county in which the well is located," or (2) have his or her "compensation finally determined by binding arbitration." Id. at § 22-7-7(a). In contrast, the plaintiff has no similar remedy to prevent the

15

defendants from denying the plaintiff entry to conduct its operations. Indeed, West Virginia law acknowledges that an "[i]njunction lies for one owning minerals in land to prevent the surface owner from unlawfully resisting and obstructing the legitimate use of the surface by the mineral owner in the development of the minerals." Squires, 121 S.E. at 91. Balancing the equities here, it seems that if a preliminary injunction is granted, the benefit to the plaintiff would not be disproportionate to the injury, if any, incurred by the defendants. Therefore, the balance of equities tip in favor of the plaintiff.

D. A Preliminary Injunction Is in the Public Interest

In Winter, "the Supreme Court emphasized the public interest requirement, stating, 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Real Truth About Obama, 575 F.3d at 347 (quoting Winter, 555 U.S. at 24). As stated above, the public policy of the State of West Virginia favors the responsible development of the state's natural gas resources in a manner similar to that proposed by the plaintiff. See W. Va. Code § 22-6A-2(a)(8) (2012). Furthermore, the Legislature of the State of West Virginia has also found that "exploration for and development of oil and gas reserves in this state must coexist with the use, agricultural or otherwise, of the surface of certain land and that each constitutes a right equal to

the other." W. Va. Code § 22-7-1 (2012). The public certainly has an interest in enforcing valid leases and ensuring that parties to those leases comply with their terms. The public also has an interest in respecting the valid property rights of others. The public does not, however, have an interest in condoning the violation of those leases or similar agreements, or refraining to respect the agreed-to rights of the parties. Here, the defendants are violating the rights of the plaintiff by denying entry onto the property to engage in oil and gas operations. That right is provided under the 2010 lease, which was renewed in 2015. Furthermore, the West Virginia Department of Environmental Protection has approved the plaintiff's proposed operations. The defendants' attempt to prevent the exercise of that lawful right is not in the public interest. Therefore, the public interest favors the granting of the plaintiff's preliminary injunction.

This Court understands that the technology of horizontal drilling and other oil and gas extraction methods is controversial. However, if those extraction methods are properly conducted, then the use of those extraction methods, standing alone, is not a basis for denying a preliminary injunction. Based on the findings above, the plaintiff has satisfied the necessary requirements for proving that a preliminary injunction is warranted. Accordingly, the plaintiff's motion for a preliminary injunction must be granted.

It must be noted that this Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." F. R. Civ. P. 65(c). Indeed, the United States Court of Appeals for the Fourth Circuit has explicitly stated that "[f]ailure to require a bond before granting preliminary injunctive relief is reversible error." Maryland Dept. of Human Resources v. U.S. Dep't of Agriculture, 976 F.2d 1462, 1484 (4th Cir. 1992); see also District 17, United Mine Workers of America v. A&M Trucking, Inc., 991 F.2d 108 (4th Cir. 1993). Therefore, the plaintiff is ORDERED to post a security bond in the amount of One Hundred Fifty Thousand Dollars ($150,000.00). The relief provided by this order shall not commence until the appropriate bond has been posted.

## V. Conclusion

For the reasons set forth above, the plaintiff's motion for a preliminary injunction (ECF No. 3) is GRANTED. Accordingly, it is hereby DECREED and ORDERED that:

> The defendants, William Francis Edge, Jr., Barbara Ann Edge, David Wayne Edge, and their agents, employees, and attorneys, be enjoined and restrained, until further Order of this Court, from denying the plaintiff, SWN Production Company, LLC, access to the 87.85 acre parcel of land located in the Sand Hill District of Marshall Count, West Virginia, or by any other means interfering with SWN Production Company, LLC's rights for the exploring, drilling for, developing, producing, operating for, gathering and marketing oil and gas, plus all other rights and privileges that are necessary or required for producing, withdrawing, storing in above ground

containment, transporting, and  marketing oil and gas,
and such other rights as described in the applicable
lease or leases.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 30, 2015


                                            /s/ Frederick P. Stamp, Jr.
                                            FREDERICK P. STAMP, JR.
                                            UNITED STATES DISTRICT JUDGE